No. _____

# In The United States Court of Appeals for the Sixth Circuit

**Kashiya Nwanguma, Molly Shah, and Henry Brousseau,**

*Plaintiffs-Respondents,*

**v.**

**Donald J. Trump and Donald J. Trump for President, Inc.,**

*Defendants-Petitioners.*

On Petition From
U.S. District Court for the Western District of Kentucky
No. 3:16-247 (Hon. David J. Hale)

## Petition of Donald J. Trump and Donald J. Trump for President, Inc. for Permission to Appeal Under § 1292

Michael A. Carvin
Anthony J. Dick
Vivek Suri
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001
(202) 879-7643
macarvin@jonesday.com

*Counsel for Defendants-Petitioners*

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule, 26.1, Petitioner Donald J. Trump for President, Inc. makes the following disclosure:

Donald J. Trump for President, Inc. is not a parent, subsidiary, or other affiliate of a publicly owned corporation, nor does a publicly owned corporation have any interest in Donald J. Trump for President, Inc. No publicly owned corporation has a substantial financial interest in the outcome of this litigation.

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement....................................................i

Table of Authorities.................................................................iii

Introduction............................................................................1

Statement of the Case ..............................................................2

    A.    Plaintiffs allege that they tried to disrupt a Trump
rally and that audience members then injured them ...........2

    B.    Plaintiffs sued Mr. Trump and the Campaign.....................3

Question Presented .................................................................6

Reasons to Grant the Petition...................................................7

    A.    Whether the First Amendment protects Mr. Trump's
speech is a controlling question of law ..................................8

    B.    There is substantial ground for difference of opinion on
the First Amendment question............................................10

    C.    Immediate review would advance the ultimate conclu-
sion of this case ...................................................................18

    D.    Separation-of-powers and First Amendment concerns
underscore the necessity of immediate review....................19

Conclusion ...........................................................................22

Certificate of Compliance

Exhibits

Certificate of Service

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bible Believers v. Wayne County,*
  805 F.3d 228 (6th Cir. 2015) (*en banc*) ...................................... *passim*

*Bonnell v. Lorenzo,*
  241 F.3d 800 (6th Cir. 2001) ............................................................... 8

*Brandenburg v. Ohio,*
  395 U.S. 444 (1969) (*per curiam*) ............................................... *passim*

*Briggs v. Ohio Elections Comm'n,*
  61 F.3d 487 (6th Cir. 1995) .............................................................. 18

*Cheney v. U.S. Dist. Court,*
  542 U.S. 367 (2004) ..................................................................... 19, 20

*Clinton v. Jones,*
  520 U.S. 681 (1997) ........................................................................... 20

*Connick v. Myers,*
  461 U.S. 138 (1983) ............................................................................. 8

*Feld v. Feld,*
  688 F.3d 779 (D.C. Cir. 2012) ........................................................... 14

*Helstoski v. Meanor,*
  442 U.S. 500 (1979) ........................................................................... 21

*Hess v. Indiana,*
  414 U.S. 105 (1973) (*per curiam*) ..................................... 8, 15, 16, 18

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston,*
  515 U.S. 557 (1995) ........................................................................... 11

*In re City of Memphis,*
  293 F.3d 345 (6th Cir. 2002) ............................................................... 7

iii

*In re Coordinated Pre-Trial Proceedings*,
    761 F.2d 710 (Temp. Emer. Ct. App. 1985)..........................................7

*McCoy v. Taylor Tire Co.*,
    254 S.W.2d 923 (Ky. 1953)...........................................................13, 14

*McFarlin v. Conseco Servs., LLC*,
    381 F.3d 1251 (11th Cir. 2004)...........................................................19

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982)..........................................................8, 15, 16, 18

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982)...........................................................................20

*Rafoth v. National Union Fire Ins. Co.*,
    954 F.2d 1169 (6th Cir. 1992)...............................................................9

*Reese v. BP Exploration (Alaska) Inc.*,
    643 F.3d 681 (9th Cir. 2011)........................................................10, 19

*Sistrunk v. City of Strongsville*,
    99 F.3d 194 (6th Cir. 1996)..................................................11, 12, 13

*Snyder v. Phelps*,
    562 U.S. 443 (2011)...........................................................................17

*Sterk v. Redbox Automated Retail, LLC*,
    672 F.3d 535 (7th Cir. 2012)...............................................................19

*Washington Post Co. v. Keogh*,
    365 F.2d 965 (D.C. Cir. 1966).............................................................22

**STATUTES**

28 U.S.C. § 1292 ................................................................... *passim*

**OTHER AUTHORITIES**

16 Charles Alan Wright *et al.*, *Federal Practice & Procedure*
    *Jurisdiction* § 3929 (3d. ed. 2017) ........................................7, 9, 10, 18

## INTRODUCTION

Petitioners President Donald J. Trump and his presidential campaign request that this Court grant permission to take an interlocutory appeal under 28 U.S.C. § 1292(b). The district court has certified that this case satisfies § 1292's prerequisites for immediate review.

This case arose because protestors sought to disrupt a Trump campaign rally, and Mr. Trump responded by saying, "Get 'em out of here" and "Don't hurt 'em." Some audience members pushed and shoved the protestors in the course of removing them from the event. The protestors then sued Mr. Trump and his campaign for "inciting a riot."

Despite Supreme Court precedent making clear that Mr. Trump's statements were fully protected under the First Amendment, the district court refused to dismiss the incitement claim. It did, however, certify an interlocutory appeal on the First Amendment question. The Court should accept the certified question: it satisfies the requirements of § 1292(b), and the need for immediate review is especially acute due to the unique sensitivities of litigation involving the President.

## STATEMENT OF THE CASE

### A. Plaintiffs allege that they tried to disrupt a Trump rally and that audience members then injured them

Plaintiffs allege as follows: On March 1, 2016, Donald J. Trump for President, Inc., (the Trump Campaign) held a rally at a convention center in Louisville, Kentucky. (Compl. ¶ 29, Dkt. 1.) The Campaign paid to rent the space and restricted entry to ticketholders. (*Id.* ¶¶ 29–31.)

The three Plaintiffs attended the rally for the avowed purpose of disrupting it by staging protests against then-candidate Donald J. Trump. *Id.* ¶¶ 36-65. For example, Plaintiff Nwanguma admits that, while standing in the crowd at the rally, she "held up a sign depicting Defendant Trump's face on the body of a pig." *Id.* ¶ 44. The protests had their desired effect of disrupting the rally. Mr. Trump had to "sto[p] his half-hour speech five different times." (*Id.* ¶ 32.)

Each time he stopped the rally, Mr. Trump said, "Get 'em out of here" or "Get out of here." (*Id.*) In response, some members of the audience allegedly "took it upon themselves to use physical force to remove [the protestors]." (*Id.* ¶ 47.) Mr. Trump, however, reminded the audience: "Don't hurt 'em. If I say 'go get em,' I get in trouble with the press, the most dishonest human beings in the world.'" (*Id.* ¶ 34.)

According to Plaintiffs, "[t]he most aggressive" audience members were Matthew Heimbach and Alvin Bamberger. (*Id.* ¶ 48.) In particular, Plaintiffs allege that Heimbach "repeatedly shoved [Plaintiff] Nwanguma" and Bamburger "aggressively mov[ed] [her] further through the crowd by shoving her and striking her." (*Id.* ¶¶ 49–50.) Plaintiff Shah alleges that she "was shoved hard from behind by Defendant Heimbach" and "was shoved and pushed by multiple Trump supporters." (*Id.* ¶¶ 58–59.) Plaintiff Brousseau alleges that he was "punched … in the stomach" by an unknown member of the audience. (*Id.* ¶ 64.) As a result, Plaintiffs allege that they suffered "anxiety and nightmares," "pain," and "difficulty sleeping." (*Id.* ¶¶ 60, 65.)

## B. Plaintiffs sued Mr. Trump and the Campaign

Plaintiffs sued the Trump Defendants (as well as Heimbach, Bamberger, and an "Unknown Defendant"). Most important for present purposes, they made a claim for incitement, contending that Mr. Trump's call for their removal "incited a riot as defined under the Kentucky penal code." (*Id.* ¶ 103.) They also raised a claim for negligence and a claim that the Trump Defendants were vicariously liable for the audience members' actions.

The Trump Defendants moved to dismiss. The district court dismissed the vicarious-liability claim, but refused to dismiss the incitement and negligence claims. The district court acknowledged that the Supreme Court set out the controlling test for incitement in *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (*per curiam*): speech amounts to incitement only if it (1) "advoca[tes] the use of force or of law violation," (2) is "directed to inciting or producing imminent lawless action," *and* (3) is "likely to incite or produce such action." The court concluded, however, that Mr. Trump's statement could meet the *Brandenburg* standard, because it is "plausible that Trump's direction to 'get 'em out of here' advocated the use of force" and "at least implicitly encouraged the use of violence or lawless action." (Ex. A at 8.) The court emphasized that Mr. Trump's call for the removal of protestors was "stated in the imperative" as "an order, an instruction, a command." (*Id.*)

On April 20, 2017, the Trump Defendants asked the court to reconsider its denial of the motion to dismiss, or, alternatively, to certify an interlocutory appeal under 28 U.S.C. § 1292(b) on the question whether the First Amendment protects Mr. Trump's statement. They also sought a stay of discovery, which the magistrate denied.

4

Plaintiffs then began to serve a series of burdensome discovery requests. For example, they sought the President's "tax returns" (which, of course, have nothing to do with incitement). Similarly, they asked for the names "of all medical providers from whom Trump has sought or received any psychological treatment." They also insisted that the President "be made available for deposition," which they "recommend[ed]" occur "in Kentucky."

Three months after the filing of the § 1292(b) motion, the district court still had not acted on it. The Trump Campaign therefore filed a petition for writ of mandamus in this Court on July 20.

On August 8, before this Court acted on the mandamus petition, the district court granted the § 1292(b) certification. (Ex. B. at 9.) The court agreed that the First Amendment issue is a "controlling question of law" whose resolution would "materially advance the ultimate termination of the litigation," and that there was "substantial ground for difference of opinion" on whether Mr. Trump's statements were protected speech. (*Id.*) It also stayed discovery pending resolution of the appeal. (*Id.* at 9.) And it reconsidered its decision on the negligence claim, ruling that it should have dismissed the claim after all. (*Id.*)

5

## QUESTION PRESENTED

The district court certified the following question (Ex. B at 9):

Does the First Amendment protect Donald J. Trump's March 1, 2016 statement 'Get 'em out of here,' or may the statement be found to constitute incitement of a riot?

## REASONS TO GRANT THE PETITION

Section 1292(b) authorizes a district court to certify an interlocutory appeal if (1) the "order involves a controlling question of law," (2) "there is substantial ground for difference of opinion" regarding that question, and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Section 1292(b) continues that, if the district court grants certification, the court of appeals "may … in its discretion, permit an appeal to be taken from such order."

The same criteria that guide the district court's decision to certify an appeal also guide the appellate court's decision to accept the certification. *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). In assessing these factors, the appellate court must "give great weight and deference to the opinion" of the trial court. *In re Coordinated Pre-Trial Proceedings*, 761 F.2d 710, 712 (Temp. Emer. Ct. App. 1985); *accord* 16 Charles Alan Wright *et al.*, *Federal Practice & Procedure Jurisdiction* § 3929 (3d. ed. 2017) (Wright & Miller).

The trial court correctly ruled that this case satisfies § 1292(b)'s criteria for immediate review. This Court should accept the certification.

7

## A. Whether the First Amendment protects Mr. Trump's speech is a controlling question of law

The question certified by the district court is a controlling question of law. To begin, "the inquiry into the protected status" of speech under the First Amendment "is one of law, not fact." *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983); *see Bonnell v. Lorenzo*, 241 F.3d 800, 809–10 (6th Cir. 2001) (protected status of speech "is a question of law for the court to decide"). In particular, it is a clear as a matter of law that speech cannot be actionable as incitement unless (among other requirements) it "advoca[tes] the use of force or of law violation." *Brandenburg*, 395 U.S. at 447. The Supreme Court and this Court have repeatedly made clear that whether speech satisfies this test is a question of law for the court. *E.g.*, *Hess v. Indiana*, 414 U.S. 105, 107 (1973) (*per curiam*); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 902 (1982); *Bible Believers v. Wayne County*, 805 F.3d 228, 246 (6th Cir. 2015) (*en banc*). Here, there is no factual dispute as to what Mr. Trump said or the relevant circumstances under which he said it. Thus, the threshold question of whether the speech is actionable under the First Amendment can be resolved based solely on the complaint as a matter of law.

The question certified by the district court is also "controlling." As the district court explained, "if the Sixth Circuit Court of Appeals were to find Trump's statement protected by the First Amendment, Plaintiffs' case against the Trump Defendants would be foreclosed." (Ex. B at 8.) This would obviously "materially affect the outcome of the litigation." *Rafoth v. National Union Fire Ins. Co.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992). It would also "save time for the district court, and time and expense for the litigants." Wright & Miller § 3930. In particular, it would avoid the need for the parties and district court to undergo burdensome discovery and motions practice involving Plaintiffs' attempts to depose the sitting President of the United States "in Kentucky," and to obtain his "tax returns" and "medical records." It would also foreclose the need for further litigation or a trial on the separate elements of whether Mr. Trump "intended" to incite violence, or whether "imminent" violence was "likely" to result from his speech. *See Brandenburg*, 395 U.S. at 447. The prospect of avoiding such burdensome litigation is more than enough to show that the threshold First Amendment question here is "controlling."

## B. There is substantial ground for difference of opinion on the First Amendment question

There is also, at a minimum, "substantial ground for difference of opinion" about whether the First Amendment protects Mr. Trump's speech. A "substantial ground for difference of opinion" exists if "reasonable jurists might disagree on [the] issue's resolution." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011); *accord* Wright & Miller § 3930. This standard does not require a showing that the petitioner is ultimately correct on the merits — just that reasonable judges could have a "difference of opinion" about whether he is.

Here, the district judge himself acknowledged that his decision is open to considerable doubt. He not only certified that "there exists [a] 'substantial ground for difference of opinion,'" but also indicated that he found the First Amendment question "particularly" "close" because Mr. Trump's speech "d[id] not explicitly call for violence." (Ex. B at 8).

Indeed, the district court's holding that Mr. Trump's speech constitutes actionable "incitement" is highly dubious for two reasons. First, a political candidate's right to call for the removal of disruptive protestors from a campaign rally lies at the very heart of the First Amendment's protection. And second, the exercise of that right through the anodyne

10

statements "Get 'em out of here" and "Don't hurt 'em" cannot possibly be construed as incitement under *Brandenburg*.

**1.** As an initial matter, the First Amendment protects Mr. Trump's right to call for the removal of disruptive protestors from his campaign rally.

The First Amendment protects the right of speakers holding expressive events to include people and messages that they wish to include, and to "exclude" people and messages they wish to exclude. *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 574 (1995). After all, an attendee's "participation" in an expressive event, such as a rally, march, or parade, is inherently "expressive." *Id.* at 570. The "fundamental rule" that "a speaker has the autonomy to choose the content of his own message" thus means that the event organizer has a right to "exclude" messages that it "d[oes] not like." *Id.* at 573–74.

This Court's decision in *Sistrunk v. City of Strongsville*, 99 F.3d 194, 199 (6th Cir. 1996), shows that these principles apply fully to campaign rallies. The Court held there that a George H. W. Bush campaign rally had a First Amendment right to exclude protestors seeking to express pro-Bill Clinton messages. Prohibiting the campaign from excluding the

11

protestors would "violat[e] the fundamental rule" that a speaker "has autonomy to choose the content of his own message.'" *Id.* at 200 (quoting *Hurley*, 515 U.S. at 573). The presence of Clinton signs in the rally would impermissibly "alter the message the organizers sent to the media and other observers, even if the holders of signs and wearers of buttons did not otherwise interfere with the pro-Bush rally." *Id.* at 199.

In this case, Plaintiffs interfered with the Trump Campaign's freedom to "choose the content of [its] own message," *Sistrunk*, 99 F.3d at 200. They attended the rally with the avowed purpose of disrupting it. They held up signs that altered the message the campaign wished to send to observers, for instance by holding up "a sign depicting [Mr.] Trump's face on the body of a pig," (Compl. ¶ 44.) They forced Mr. Trump to "sto[p] his half-hour speech five different times." (*Id.* ¶ 32.)

Mr. Trump had every right to call for the removal of these disruptors. Any contrary rule would destroy the practical ability of political campaigns to express their messages at campaign rallies without being sabotaged by intruders. Under the district court's ruling, a candidate besieged by legions of opponents interfering with a campaign rally could not so much as say "Get them out of here" without subjecting himself to

an "incitement" claim and all the attendant burdens of civil discovery and depositions. The First Amendment does not allow courts so to disable political candidates from controlling the content of their campaign rallies.

Accordingly, even accepting Plaintiffs' allegations as true, it is clear that Mr. Trump was not "inciting a riot," but was rather exercising a core constitutional right when he reacted to the disruptive protestors by saying, "Get 'em out of here" and "Don't hurt 'em." His statements were nothing more than an "exercise [of his] free speech rights and autonomy over the content of [his] own message" at his own political campaign rally. *Sistrunk*, 99 F.3d at 200 (quoting *Hurley*, 515 U.S. at 573). And contrary to the district court's conclusion (Ex. B at 7), the undisputed "context" — a campaign rally — weighs heavily *against* treating the speech as incitement.

Indeed, even if Mr. Trump were speaking at an ordinary social event devoid of expressive import rather than at a campaign rally, his call for the removal of protestors would still be protected since he never urged the use of *unlawful* force. In Kentucky, as in virtually every state, it is lawful — not "lawless" — to use "that degree of force" that is "reasona-

13

bly necessary" to "eject an unwelcome trespasser." *McCoy v. Taylor Tire Co.*, 254 S.W.2d 923, 924 (Ky. 1953); *see Feld v. Feld*, 688 F.3d 779, 783 (D.C. Cir. 2012) ("the right to exclude … includes the right to use reasonable force"). Mr. Trump thus cannot be liable for incitement unless he urged *more force than necessary* to remove the disruptors. Here, it is clear as a matter of law that Mr. Trump did no such thing. "Get 'em out of here" is an entirely proper way to call for the use of lawful means to eject an intruder, particularly when accompanied by the admonition "Don't hurt 'em." Since Mr. Trump did not call for the use of *any* force, much less the use of *excessive* force, the First Amendment forbids punishing him or his campaign for his speech.

The district court tried to avoid this problem by claiming that *Brandenburg* "requires not that speech objectively encouraged imminent *lawless* action, but simply 'imminent action.'" (Ex. B at 7 n.5). That is not true. As both the Supreme Court and this Court have recognized, state law "cannot proscribe advocacy of the use of force" unless the speaker advocates "imminent *lawless* action." *Bible Believers*, 805 F.3d at 244 (quoting *Brandenburg*, 395 U.S. at 447) (emphasis added).

**2.** Under the facts and circumstances alleged here, Mr. Trump's use of the commonplace expression "Get 'em out of here" cannot possibly be construed to fall within the narrow category of unprotected "incitement."

Speech is unprotected incitement only if it (1) "advoca[tes] the use of force or of law violation," (2) is "directed to inciting or producing imminent lawless action," *and* (3) "likely to incite or produce such action." *Brandenburg*, 395 U.S. at 447. If the "[a]dvocacy for the use of force or lawless behavior" is "absent" from the speech at issue, the speech is fully protected "as a matter of law." *Bible Believers*, 805 F.3d at 242, 244.

These are difficult standards to meet. For example, in *Claiborne Hardware*, "a speaker explicitly proposed to a large crowd that anyone who failed to abide by the terms of an agreed upon boycott would have to be 'disciplined.'" *Bible Believers*, 805 F.3d at 245 (quoting *Claiborne Hardware*, 458 U.S. at 902). He also said, "we're gonna break your damn neck," 458 U.S. at 902, which easily could have been understood to encourage violence. Nonetheless, the Supreme Court held that this speech, as a matter of law, did not amount to incitement. *Id.* at 929.

Similarly, in *Hess*, a protestor yelled "We'll take the fucking street again" while "amidst an agitated crowd that was already resisting po-

lice authority." *Bible Believers*, 805 F.3d at 244–45 (quoting *Hess*, 414 U.S. at 107). There were "surely possible constructions of the statement which would encompass … immediate and continuing action against the harassed police." *Hess*, 414 U.S. at 111 (Rehnquist, J., dissenting). Even so, there was no incitement as a matter of law, since there was no clear call for imminent violence. *Id.* at 107 (majority op.).

Mr. Trump's speech is far more innocuous than the statements in *Claiborne Hardware* and *Hess*. Mr. Trump simply said "Get 'em out of here," which is a natural way to issue a lawful directive to expel disruptive protestors. Far from advocating unlawful force or violence, Mr. Trump added: "Don't hurt 'em." A court may not convert an instruction to expel disruptive protestors in a way that does *not* hurt them into an instruction to expel them in a way that *does* hurt them.

In reaching the contrary conclusion, the district court suggested that the proper interpretation of Mr. Trump's statements is a factual question for a jury. (Ex. A at 8.) Not so. In First Amendment cases, courts "must make an independent examination … so as to assure [them]selves that the [plaintiff's claim] does not constitute a forbidden intrusion on the field of free expression." *Claiborne*, 458 U.S. at 915

n.50. They may not leave the issue of First Amendment protection to the vagaries of a jury trial — especially in a politically charged case such as this one, where "a jury is unlikely to be neutral with respect to the content of the speech, posing a real danger of becoming an instrument for the suppression of vehement, caustic, and sometimes unpleasant expression." *Snyder v. Phelps*, 562 U.S. 443, 458 (2011). Indeed, even on the fact-intensive element of intent to incite, the importance of judicial gatekeeping is so great that "there will rarely be enough evidence to create a jury question on whether a speaker was intending to incite imminent crime." *Bible Believers*, 805 F.3d at 244 (citation omitted). *A fortiori*, there is *never* a "jury question" on the threshold First Amendment issue of whether a statement objectively advocates unlawful violence.

The district court also suggested that Mr. Trump's statements may be punished because they "*implicitly* encouraged the use of violence." (Ex. B at 7.) That, too, is incorrect. Of course, one could imagine speech that "implicitly" urges violence. But such speech can be punished (if at all) only if the implication is abundantly clear. Otherwise, a wide range of speech (ranging from Black Lives Matter marches to anti-abortion

protests) would lose protection the moment a plaintiff comes up with a creative theory about how it "implicitly" calls for violence. For this reason, states may not "regulat[e] speech based upon its *implication*" (*Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 494 (6th Cir. 1995)), and "the mere tendency of speech to encourage unlawful acts is not a sufficient reason" to deem it incitement (*Bible Believers*, 805 F.3d at 244–45).

Here, the complaint fails to allege anything that comes remotely close to a clear implication of incitement. The Supreme Court held in *Hess* and *Claiborne* that the Constitution protects calls for agitated supporters to "take the fucking street again" and to "break your damn neck." If that graphic language enjoys First Amendment protection as a matter of law, then "Get 'em out of here" must as well.

## C. Immediate review would advance the ultimate conclusion of this case

The final criterion for certification is whether immediate review "may materially advance the ultimate termination of the litigation." § 1292(b). This requirement is "closely tied to the requirement that the order involve a controlling question of law." Wright & Miller § 3930. A question satisfies the requirement if its resolution would "substantially shorten the litigation." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251,

1259 (11th Cir. 2004). Resolving *some* of the claims in a case in their entirety is "sufficient to advance materially the litigation," even if it would not resolve the whole case. *Reese*, 643 F.3d at 688.

The resolution of the First Amendment question would substantially shorten this litigation. If the Trump Defendants prevail on this appeal, the only remaining claim against them will be dismissed. And if Plaintiffs instead prevail, this Court's decision will dispel "uncertainty" about the relative strength of the parties' legal positions, enabling "settlement" of Plaintiffs' legal claims. *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536–37 (7th Cir. 2012). That is enough to satisfy this final requirement for interlocutory review.

### D. Separation-of-powers and First Amendment concerns underscore the necessity of immediate review

Two further factors underscore the necessity of granting immediate review: First, the President is a party to this litigation. Second, this is a case about freedom of speech.

**1.** "Separation-of-powers considerations" must "inform a court of appeals' evaluation" of any legal proceedings "involving the President." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 382 (2004). The President "occupies a unique office." *Clinton v. Jones*, 520 U.S. 681, 697–98 (1997).

He has "vast and important" "powers and responsibilities." *Id.* at 697. The "public interest demands that he devote his undivided time and attention" to these responsibilities. *Id.*

Private lawsuits, however, threaten to prevent the President from devoting his undivided time to his public responsibilities. As the Supreme Court has warned, echoing Thomas Jefferson, "the several courts" would badly compromise the executive function if they were to "bandy him pillar to post, keep him constantly trudging from north to south & east to west, and withdraw him entirely from his constitutional duties." *Nixon v. Fitzgerald*, 457 U.S. 731, 750 n.31 (1982).

For this reason, courts must "recogniz[e] the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties." *Cheney*, 542 U.S. at 382. Failure to do so would raise "unique risks to the effective functioning of government." *Clinton*, 520 U.S. at 694 n.19.

This case presents all of those risks. Before the district court stayed discovery, Plaintiffs made it clear that they plan to use this case as a means of harassing the President. For example, they have sought the President's "tax returns" (but have not explained how those returns are

20

even potentially relevant). They have asked for the names of "all medical providers from whom Trump has sought or received any psychological treatment." And they have sought to depose Mr. Trump — "in Kentucky." Unless this Court acts, the President will have to engage in a costly, exhaustive, and time-consuming discovery battle. That battle will require active participation of executive officials at the highest levels of the White House and the Department of Justice. Respectfully, this Court has an obligation to avoid that outcome by granting immediate appellate review on the controlling threshold question certified by the district court.

**2.** First Amendment values likewise support allowing an immediate appeal. The First Amendment protects speakers "not only from the consequences of litigation's results but also from the burden of defending themselves" against baseless lawsuits. *Helstoski v. Meanor*, 442 U.S. 500, 508 (1979). Without "freedom from the harassment of lawsuits," the burdens of litigation can impose their own form of censorship, which is "hardly less virulent for being privately administered" through meritless tort claims. *Washington Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966).

Allowing Plaintiffs' claims to go forward would punish the Trump Defendants for fully protected speech: It would force them to undergo burdensome litigation, including intrusive discovery and depositions, as the price of exercising their First Amendment rights. That is yet another reason to accept the district court's certification of the First Amendment question.

## CONCLUSION

The Court should grant permission to appeal on the question certified by the district court.

Dated: August 18, 2017

Respectfully submitted,

/s/ Michael A. Carvin

Michael A. Carvin
  *Counsel of Record*
Anthony J. Dick
Vivek Suri
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
macarvin@jonesday.com

*Counsel for Petitioners*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1). It contains 4,222 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(c) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007.

/s/ *Michael Carvin*
Michael Carvin

# Exhibit A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KASHIYA NWANGUMA, et al.,                                     Plaintiffs,

v.                                    Civil Action No. 3:16-cv-247-DJH

DONALD J. TRUMP, et al.,                                  Defendants.

\* \* \* \* \*

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Kashiya Nwanguma, Molly Shah, and Henry Brousseau attended a presidential campaign rally for Defendant Donald J. Trump with the intention of protesting.  Plaintiffs allege that as they were protesting, Trump said, "Get 'em out of here," following which several members of the audience, including Defendants Matthew Heimbach and Alvin Bamberger, physically attacked them, forcing them to leave the rally.  They allege assault and battery by Heimbach and Bamberger, as well as incitement to riot, vicarious liability, and negligence on the part of Trump and his campaign, Donald J. Trump for President, Inc. (the "Trump Defendants"). (Docket No. 1)  The Trump Defendants have filed a motion to dismiss for failure to state a claim (D.N. 9), as has Bamberger (D.N. 10); Heimbach, proceeding pro se, has moved to strike certain allegations from the complaint (D.N. 11).  At this early stage of the case, the Court finds most of Plaintiffs' claims to be sufficient.  Accordingly, for the reasons discussed below, the Trump Defendants' and Bamberger's motions will be granted in part and denied in part, while Heimbach's motion will be denied.

# I.  BACKGROUND

The following facts are set out in the complaint and must be accepted as true for purposes of the present motions.  *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012); *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 821 (6th Cir. 1953).

On March 1, 2016, Trump held a campaign rally at the Kentucky International Convention Center in Louisville, Kentucky.  (D.N. 1-1, PageID # 10; *see id.*, PageID # 8) Nwanguma, Shah, and Brousseau each attended the rally for the purpose of "peacefully protesting Trump."  (*Id.*, PageID # 11-13)  As they were protesting, Trump said, "Get 'em out of here."  (*Id.*, PageID # 10)  Heimbach, Bamberger, and other audience members then physically attacked Plaintiffs.  Nwanguma, who is African-American, was shoved first by Heimbach and then by Bamberger, who also struck her.  (*Id.*, PageID # 12)  Shah was likewise shoved by Heimbach and other audience members.  (*Id.*, PageID # 13)  Brousseau, a seventeen-year-old high school student, was punched in the stomach by an unknown defendant believed to be a member of the Traditionalist Worker Party, a white nationalist group Heimbach was representing at the rally.  (*Id.*, PageID # 7-9, 12-14)  Plaintiffs allege that as they were being attacked, Trump said, "Don't hurt 'em.  If I say 'go get 'em,' I get in trouble with the press . . . ."  (*Id.*, PageID # 10)

In a letter to the Korean War Veterans Association, whose uniform he wore at the rally, Bamberger described the incident as follows: "Trump kept saying 'get them out, get them out' and people in the crowd began pushing and shoving the protestors . . . I physically pushed a young woman down the aisle toward the exit . . . ."  (D.N. 1-1, PageID # 15 ¶ 76 (first omission in original) (quoting letter to KWVA))  Heimbach acknowledged in a blog post that he had "help[ed] the crowd drive out one of the women" who were protesting.  (*Id.*, PageID # 14 ¶ 70)

Videos recorded at the rally captured Heimbach and Bamberger's actions.  (*Id.*, PageID # 11 ¶ 46)

Plaintiffs allege assault and battery by Heimbach, Bamberger, and the Unknown Defendant, and they seek to hold the Trump Defendants vicariously liable for those torts.  (*Id.*, PageID # 18-21)  In addition, Plaintiffs accuse the Trump Defendants of incitement to riot (*id.*, PageID # 19) and negligence, gross negligence, and recklessness (*id.*, PageID # 21-22).  They seek compensatory and punitive damages.  (*Id.*, PageID # 22)

## II.   ANALYSIS

### A.   Motions to Dismiss

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept such statements as true.  *Id.*  A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" does not satisfy the pleading requirements of Rule 8 and will not withstand a motion to dismiss.  *Id.* at 679.

### 1.   Trump Defendants

The Trump Defendants seek dismissal of Counts III, IV, and V of the complaint, which allege incitement, agency/vicarious liability, and negligence, gross negligence, and recklessness. (*See* D.N. 1-1, PageID # 19-22)  The Court will address each claim in turn.

3

### a.  Incitement to Riot

The Trump Defendants oppose Plaintiffs' incitement claim on several grounds.  First, they assert that it is not plausible that Trump was addressing audience members or intended for violence to ensue when he gave the direction to remove protestors.  (D.N. 9-1, PageID # 54-55)  They further contend that this claim is deficient because Plaintiffs do not allege that a riot actually occurred.  (*Id.*, PageID # 55-56)  Finally, the Trump Defendants argue that Trump's statement ("get 'em out of here") is protected by the First Amendment.  (*Id.*, PageID # 56-61)  None of their contentions requires dismissal at this stage of the proceedings.

### i.  Plausibility

According to the Trump Defendants, Plaintiffs' incitement claim is implausible because there is an "obvious alternative explanation" for the meaning of Trump's words, namely that he intended for professional security personnel to remove the protestors.  (D.N. 9-1, PageID # 54 (quoting *Iqbal*, 556 U.S. at 682))  With this argument, the Trump Defendants effectively seek to impose a probability standard on Plaintiffs' complaint.  (*See id.* (asserting that "'given [this] more likely explanation[n],' Plaintiffs' allegations 'do not plausibly establish' a claim for incitement" (alterations in original) (quoting *Iqbal*, 556 U.S. at 381)))  The Sixth Circuit has rejected this approach, finding it to be inconsistent with *Twombly* and *Iqbal*.  *See Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011) ("*Twombly* insists that pleadings be plausible, not probable." (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556)).  "Often, defendants' conduct has several plausible explanations.  Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage."  *Id.*  Simply put, the plausibility of the Trump Defendants' explanation for Trump's statement "does not render all other [explanations] implausible."  *Id.*

Plaintiffs allege numerous facts supporting an inference that Trump's order to "get 'em out of here" was directed at audience members. The complaint describes multiple occasions before and after the Louisville rally when Trump allegedly made comments endorsing or encouraging violence against protestors. (*See* D.N. 1-1, PageID # 16-17)  And Bamberger's letter, quoted in the complaint, confirms that he and others "began pushing and shoving the protestors" upon Trump's order that the protestors be removed. (*Id.*, PageID # 15 ¶ 76) Moreover, after audience members took matters into their own hands, Trump allegedly stated, "Don't hurt 'em. If I say 'go get 'em,' I get in trouble with the press." (*Id.*, PageID # 10) Presumably, if he had intended for protestors to be escorted out by security personnel, Trump would have instructed the intervening audience members to stop what they were doing, rather than offering guidance on how to go about it. (*See* D.N. 1-1, PageID # 16 (alleging that Trump "watched as his supporters physically removed and accosted Plaintiffs at the Rally"))  In sum, the Court finds that the Trump Defendants have not identified an "obvious alternative explanation" for Trump's statement warranting dismissal of the incitement claim. *Iqbal*, 556 U.S. at 662.

### ii.    Occurrence of a Riot

Next, the Trump Defendants assert that the incitement claim fails because it does not allege that there actually was a riot. (D.N. 9-1, PageID # 55-56)  Plaintiffs bring their incitement claim pursuant to Ky. Rev. Stat. §§ 525.010 and 525.040. (D.N. 1-1, PageID # 19)  The latter provides that "[a] person is guilty of inciting to riot when he incites or urges five (5) or more persons to create or engage in a riot."[1]  § 525.040(1).  "Riot" is defined as "a public disturbance

---

[1] A plaintiff may recover for injuries suffered as a result of a defendant's violation of a criminal statute pursuant to Ky. Rev. Stat. § 446.070. (*See* D.N. 1-1, PageID # 19 ¶ 105 (invoking § 446.070))

involving an assemblage of five (5) or more persons which by tumultuous and violent conduct creates grave danger of damage or injury to property or persons or substantially obstructs law enforcement or other government function."  § 525.010(5).  The incitement statute does not require that a riot actually occur, nor do the Trump Defendants cite any case establishing such a requirement.  Nevertheless, they argue that the complaint fails to allege that five or more persons were involved in Plaintiffs' mistreatment or that there was in fact "tumultuous and violent conduct" at the rally.[2]  (D.N. 9-1, PageID # 56)

The word *incitement* is defined as "[t]he act or an instance of provoking, urging on, or stirring up," or, in criminal law, "[t]he act of persuading another person to commit a crime." *Black's Law Dictionary* (10th ed. 2014).  Beyond this definition, *Black's* includes the following explanation:

> An inciter is one who counsels, commands or advises the commission of a crime. It will be observed that this definition is much the same as that of an accessory before the fact. What, then, is the difference between the two? It is that *in incitement the crime has not (or has not necessarily) been committed*, whereas a party cannot be an accessory in crime unless the crime has been committed. An accessory before the fact is party to consummated mischief; an inciter is guilty only of an inchoate crime.

*Id.* (emphasis added) (quoting Glanville Williams, *Criminal Law: The General Part* 612 (2d ed. 1961)).  Thus, no riot need have occurred in order for Trump to be liable for inciting one.

In any event, the supposed flaws in Plaintiffs' claim are nonexistent.  The complaint alleges that Trump directed "*his crowd of supporters* to 'get 'em out of here'" (D.N. 1-1, PageID # 10 (emphasis added)) and that Nwanguma was "violently assaulted by *numerous protestors*"

---

[2] The Trump Defendants also briefly assert that "Plaintiffs fail to allege that Mr. Trump intended for any tumultuous and violent conduct to occur."  (D.N. 9-1, PageID # 56)  Paragraph 104 of the complaint, however, alleges precisely that.  (D.N. 1-1, PageID # 19)  And Plaintiffs' allegations that Trump had previously condoned violence toward protestors provide the necessary factual support for Paragraph 104.  (*See id.*, PageID # 16-17)

(*id.*, PageID # 11 (emphasis added)), of whom Heimbach and Bamberger were "[t]he most aggressive" (*id.*, PageID # 12).  With respect to Shah, Plaintiffs allege that "[w]hen Trump told the audience to 'get 'em out of here,' Heimbach and his group [of four to six people] rushed in and began physically assaulting the protestors" (*id.*); "[a]s Shah continued to the back of the convention center, she was shoved and pushed by multiple Trump supporters."  (*Id.*, PageID # 13)  If this were not enough, Count III of Plaintiffs' complaint tracks the language of § 525.040(1), alleging that "[i]n directing his supporters to eject peaceful protestors using harmful physical force, Trump intended to create a public disturbance involving an assemblage of five or more persons which by tumultuous and violent conduct created grave danger of damage or injury."  (D.N. 1-1, PageID # 19 ¶ 104)  The Court therefore finds that Plaintiffs have adequately alleged incitement of five or more persons.

Likewise, to the extent an express allegation of tumult and violence is required, Paragraph 104 satisfies that requirement.  (*See id.*; D.N. 9-1, PageID # 56 ("Nowhere in their Complaint do Plaintiffs allege there was 'tumultuous and violent' conduct or '*grave* danger.'"))  The Court finds sufficient factual support for this allegation in the complaint: Plaintiffs—as well as Bamberger, in his letter—describe a chaotic and violent scene in which a crowd of people turned on three individuals, and those individuals were injured as a result.  In short, Plaintiffs' incitement claim is adequately pled.

### iii.    First Amendment

Lastly, the Trump Defendants maintain that they cannot be liable for incitement because Trump's statement ("get 'em out of here") was constitutionally protected speech.  (D.N. 9-1, PageID # 56-61)  "[W]hen a speaker incites a crowd to violence, his incitement does not receive constitutional protection."  *Bible Believers v. Wayne Cty.*, 805 F.3d 228, 245 (6th Cir. 2015)

(citing *Glasson v. City of Louisville*, 518 F.2d 899, 905 n.3 (6th Cir. 1975)). Under the test set forth in *Brandenburg v. Ohio*, 395 U.S. 444 (1969), speech may not be "sanctioned as incitement to riot unless (1) the speech explicitly or implicitly encouraged the use of violence or lawless action, (2) the speaker intends that his speech will result in the use of violence or lawless action, and (3) the imminent use of violence or lawless action is the likely result of his speech." *Bible Believers*, 805 F.3d at 246 (footnote omitted) (citing *Brandenburg*, 395 U.S. at 447). In other words, "speech that fails to specifically advocate for listeners to take 'any action' cannot constitute incitement." *Id.* at 245 (quoting *Hess v. Indiana*, 414 U.S. 105, 109 (1973)); *see id.* at 246 n.11 ("*Brandenburg*'s plain language (reinforced by *Hess*) requires that the words must, at a minimum, implicitly encourage the use of force or lawlessness, or the undertaking of some violent 'act' . . . ."). Notwithstanding the Trump Defendants' insistence to the contrary, Plaintiffs have adequately alleged that Trump's statement meets these criteria.

First, it is plausible that Trump's direction to "get 'em out of here" advocated the use of force. Unlike the statements at issue in the cases cited by the Trump Defendants, "get 'em out of here" is stated in the imperative; it was an order, an instruction, a command. *Cf. NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 902 (1982) ("If we catch any of you going in any of them racist stores, we're gonna break your damn neck."); *Hess*, 414 U.S. at 107 ("We'll take the fucking street again."); *Watts v. United States*, 394 U.S. 705, 705 (1969) ("If they ever make me carry a rifle the first man I want to get in my sights is L.B.J."). Based on the allegations of the complaint, which the Court must accept as true, Trump's statement at least "implicitly encouraged the use of violence or lawless action." *Bible Believers*, 805 F.3d at 246.

Second, as discussed above, Plaintiffs allege that Trump intended for his statement to result in violence (D.N. 1-1, PageID # 15 ¶¶ 81-82, # 19 ¶¶ 104, 106), and they provide facts to

8

support that allegation. *See supra* Part II.A.1.a.i. Whether he actually intended for violence to occur is beyond the scope of the Court's inquiry at the motion-to-dismiss stage.

Third, the complaint adequately alleges that Trump's statement was likely to result in violence—most obviously, by alleging that violence actually occurred as a result of the statement. (*See, e.g.*, D.N. 1-1, PageID # 12 ¶ 56, # 15 ¶ 76) Further, Plaintiffs allege throughout the complaint that Trump knew or should have known that his statements would result in violence (*see, e.g.*, *id.*, PageID # 15-16 ¶ 82), and they describe a prior Trump rally at which a protestor was attacked. (*Id.*, PageID # 16 ¶ 85) The Court finds these allegations to be sufficient.

The Trump Defendants expend significant effort arguing that Trump's words did not call for "imminent lawless action" because Plaintiffs were trespassers and thus their removal could not have been unlawful. (*See* D.N. 9-1, PageID # 58-60; D.N. 23, PageID # 250-52) But the complaint does not establish that Plaintiffs were trespassers, as the Trump Defendants insist; to the contrary, it alleges that tickets and entry to the rally "were not denied to people simply because they had political views which differed from Trump and/or his supporters." (D.N. 1-1, PageID # 10) It thus does not establish that Plaintiffs "knew . . . that they were in a place they had no right to be" as soon as they began protesting. (D.N. 9-1, PageID # 59 (quoting *O'Leary v. Commonwealth*, 441 S.W.2d 150, 157 (Ky. 1969))) Unlike the appellants in *O'Leary*—student protestors convicted of breaching the peace after being "physically carried down the stairs and out of the building" by campus police for refusing to leave an area the dean had told them to vacate, 441 S.W.2d at 153—Plaintiffs did not "refus[e]" to leave before they were forcibly removed.[3] (D.N. 9-1, PageID # 59) Rather, according to the complaint, the violence began as

---

[3] The Court does not agree that *O'Leary* provides the applicable standard here in any event.

soon as Trump said "get 'em out of here." (*See, e.g.*, D.N. 1-1, PageID # 12 ¶ 56; *id.*, PageID # 15 ¶ 76)  In sum, Plaintiffs have alleged a plausible claim of incitement to riot.

### b.    Vicarious Liability

Plaintiffs allege that Heimbach and Bamberger were acting as Trump's agents when the incident occurred.[4]  (D.N. 1-1, PageID # 20)  The Trump Defendants maintain that they cannot be held vicariously liable for Heimbach and Bamberger's actions.  (D.N. 9-1, PageID # 61-64)  With respect to this claim, the Court agrees that the complaint is deficient.

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other to so act." *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 50 (Ky. 2003) (quoting *CSX Transp., Inc. v. First Nat'l Bank of Grayson*, 14 S.W.3d 563, 566 (Ky. Ct. App. 1999)).  No employment relationship is necessary to establish agency.  *Brooks v. Grams, Inc.*, 289 S.W.3d 208, 211 (Ky. Ct. App. 2008).  Nor does it matter whether the purported agent "volunteered his services." *Id.* (citing *Fournier v. Churchill Downs-Latonia, Inc.*, 166 S.W.2d 38, 40 (Ky. 1942)).  Instead, under Kentucky law, "the most critical element in determining whether an agency relationship exists" is the alleged principal's "right to control" the agent's conduct.  *Phelps*, 103 S.W.3d at 50 (quoting *CSX Transp.*, 14 S.W.3d at 566-67).  Plaintiffs fail to allege that Trump had this right.

Count IV of the complaint asserts that the Trump Defendants "selectively targeted the protesters for physical violence because of the content of their speech" (D.N. 1-1, PageID # 20 ¶ 111); that Trump's "statements and comments during the Rally called for and sanctioned the physical abuse of Plaintiffs" (*id.* ¶ 113); that his "inducement and encouragement of Heimbach,

---

[4] In the alternative, Plaintiffs seek apportionment of fault to the Trump Defendants.  (*See* D.N. 1-1, PageID # 20 ¶ 110)  The Court makes no finding as to apportionment at this time.

Bamberger, and/or Unknown Defendant to remove Plaintiffs from the Rally by way of physical force was a substantial factor in causing Plaintiffs' injuries" (*id.* ¶ 114); and that he "knew or should have known" that his statement would result in Plaintiffs being physically assaulted. (*Id.* ¶ 112; *see also id.*, PageID # 20-21 ¶ 115) Nowhere in Count IV or elsewhere in the complaint do Plaintiffs allege that Trump or the campaign had the right to control the other defendants' actions. Although allegations that audience members acted at Trump's direction suggest that he exercised some level of control over Bamberger and Heimbach (*see, e.g.*, *id.*, PageID # 15), it is not enough that "Trump told people to do something" and "[t]hey did it," as Plaintiffs assert. (D.N. 16, PageID # 177) Rather, a principal must have control over the manner in which the agent performs his duties. *Nazar v. Branham*, 291 S.W.3d 599, 606-07 (Ky. 2009) ("An individual is the agent of another if the principal has the power or responsibility to control the method, manner, and details of the agent's work." (citing *City of Winchester v. King*, 266 S.W.2d 343, 345 (Ky. 1954))); *cf. Brooks*, 289 S.W.3d at 212 (store employee's spouse who caused car accident with plaintiffs while running errand for store was not store's agent where "[a]part from supplying the money," store did not "exercise[] any control over how [he] performed the task"). Plaintiffs' conclusory assertions that "Heimbach, Bamberger, and Unknown Defendant were acting as agents" of the Trump defendants (*id.*, PageID # 20 ¶ 108) and that the campaign is vicariously liable for the actions of Trump and his agents (*id.* ¶ 109) are insufficient without supporting factual allegations. *See Churchill Downs, Inc. v. NLR Entm't, LLC*, No. 3:14-CV-166-H, 2014 U.S. Dist. LEXIS 71672, at *8-*9 (W.D. Ky. May 27, 2014). Count IV will therefore be dismissed.

### c.        Negligence

Finally, the Trump Defendants contend that they cannot be liable for negligence because they had no duty to Plaintiffs; the security provided was adequate; there is no alleged causal connection between Trump's words and Plaintiffs' injuries; and Plaintiffs assumed the risk of injury.  (D.N. 9-1, PageID # 64-68)  In their reply, they further assert that to find Trump's statement negligent—which they characterize as a "new negligence theory" raised for the first time in Plaintiffs' response—would violate the First Amendment.  (D.N. 23, PageID # 253) None of these contentions has merit.

As an initial matter, the Court rejects the Trump Defendants' baseless assertion that Plaintiffs announced a "new negligence claim" in their response by indicating that Trump "could be liable for speaking and negligently causing Plaintiffs harm."  (D.N. 23, PageID # 253)  Count V of the complaint alleges:

> 121.    Trump and the Trump campaign knew or should have known that by encouraging members of the audience, including Heimbach, Bamberger, and/or Unknown Defendant, to "get [Plaintiffs] out of here," these individuals would physically attack the Plaintiffs.

> 122.    In particular, the directive to eject a Black woman, when several members of a group that Trump knew or should have known was a recognized hate group were present in the audience, was entirely reckless, or at least negligent/grossly negligent.

(D.N. 1-1, PageID # 21-22)  The assertion that Plaintiffs failed to allege "any knowledge on the part of Defendants" that Trump's audience might be predisposed to violence is similarly misguided in light of Paragraph 122.  (D.N. 23, PageID # 255)

Nor is the Court persuaded by the Trump Defendants' contention that the First Amendment precludes liability for negligence here.  (*See id.*, PageID # 253)  The cases they cite involved defamation or other false statements.  (*See id.* (citing *United States v. Alvarez*, 132 S.

Ct. 2537 (2012); *Illinois ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600 (2003);

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)))  The sole exception is *Rogers v. United*

*States*, 422 U.S. 35 (1975), in which the defendant was convicted of making threats against the

president and Justice Marshall cautioned in a concurrence that the Court "should be particularly

wary of adopting [a negligence] standard for a statute that regulates pure speech."  *Id.* at 47

(Marshall, J., concurring).  This is hardly a categorical rule.  The law is clear, however, that

"[s]peech that falls within th[e] category of incitement is not entitled to First Amendment

protection."  *James v. Meow Media, Inc.*, 300 F.3d 683, 698 (6th Cir. 2002) (considering

negligence claims against producers of violent video games and movies).  And as explained

above, Plaintiffs have adequately alleged that Trump's words amounted to incitement.  *See supra*

Part II.A.1.a.  Their negligence claim thus presents no First Amendment concerns at this stage of

the case.

The complaint also sufficiently alleges that the Trump Defendants had a duty to

Plaintiffs.  Though the Trump Defendants are correct that "a proprietor is not the insurer of the

safety of its guests," *Murphy v. Second St. Corp.*, 48 S.W.3d 571, 574 (Ky. Ct. App. 2001), this

does not absolve them from liability.[5]  "In Kentucky, 'the rule is that every person owes a duty to

---

[5] In a parenthetical, the Trump Defendants assert that they were not "proprietors."  (D.N. 9-1, PageID # 65)  They offer no explanation or authority for this contention.  While the term *proprietor* normally refers to "[a]n owner, esp[ecially] one who runs a business," *Black's Law Dictionary* (10th ed. 2014), it also means "[a] person who . . . has a (usually exclusive) right or title to [something's] use or disposal."  *Oxford English Dictionary* (3d ed. 2007); *see also Pirolo v. City of Clearwater*, 711 F.2d 1006, 1010 (11th Cir. 1983) ("*Black's Law Dictionary* defines a proprietor as: 'One who has the legal right or exclusive title to anything.  In many instances it is synonymous with owner.'" (quoting *Black's Law Dictionary* 1098 (rev. 5th ed. 1979)))  As the Trump Defendants had the right to use the convention center on the day of the rally, they may have borne the duty "to provide adequate security," as Plaintiffs allege.  (D.N. 1-1, PageID # 21 ¶ 117; *see id.* ¶ 120 (alleging that Trump Defendants were negligent or reckless in "relying on the crowd of Trump supporters to provide security"))  The Court need not resolve this issue at the motion-to-dismiss stage.

every other person to exercise ordinary care in his activity to prevent *foreseeable* injury.'"

*Waldon v. Housing Auth. of Paducah*, 854 S.W.2d 777, 779 (Ky. Ct. App. 1991) (quoting

*Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328 (1987)).

To establish foreseeability in the proprietor–patron context, a plaintiff must show

> (1) that the proprietor had knowledge that one of his patrons was about to injure the plaintiff and he failed to exercise ordinary care to prevent such injury; or[] (2) that the conduct of some of the persons present was such as would lead a reasonably prudent person to believe that they might injure other guests.

*Murphy*, 48 S.W.3d at 574 (citing *Sidebottom v. Aubrey*, 101 S.W.2d 212, 213 (Ky. 1937)).

"Even an intervening criminal act does not relieve one f[rom] liability for his or her negligent

acts or omissions, where the criminal act is a reasonably foreseeable consequence of the

defendant's negligent act." *Waldon*, 854 S.W.2d at 779 (citing *Wheeler v. Andrew Jergens Co.*,

696 S.W.2d 326 (Ky. 1985)); *see also* Restatement (Second) of Torts § 302B (1965) ("An act or

an omission may be negligent if the actor realizes or should realize that it involves an

unreasonable risk of harm to another through the conduct of the other or a third person which is

intended to cause harm, even though such conduct is criminal.").

The cases cited by the Trump Defendants on this point are inapposite.  (*See* D.N. 9-1,

PageID # 65-66)  In *Grisham v. Wal-Mart Stores, Inc.*, 929 F. Supp. 1054 (E.D. Ky. 1996), the

plaintiffs sued Wal-Mart for negligence after they were robbed at gunpoint in the store's parking

lot and one plaintiff was shot in the hand and knee.  *Id.* at 1055-56.  The court concluded that a

single previous robbery within five miles of the store did not make the plaintiffs' robbery

foreseeable and that Wal-Mart thus did not have a duty to prevent it.[6]  *See id.* at 1058-59.

---

[6] Citing *Grisham*, the Trump Defendants assert: "Kentucky law is clear that 'neither a single incident nor sporadic incidents are sufficient to establish foreseeability.'"  (D.N. 9-1, PageID # 65 (quoting *Grisham*, 929 F. Supp. at 1058))  In fact, this purported rule is neither clear nor established in Kentucky.  The *Grisham* court's full statement was as follows: "Although no

Likewise, in *Napper v. Kenwood Drive-In Theatre Co.*, 310 S.W.2d 270 (Ky. 1958), it was not foreseeable that a group of boys would start a fist fight with the plaintiffs at a drive-in movie theater after "smarting off," "bothering girls," and "looking for boys with leather jackets." *Id.* at 271; *see id.* at 272. As the *Napper* court noted, "what constitutes ordinary care or reasonable foreseeability varies with the particular circumstances." *Id.* at 271. Neither *Grisham* nor *Napper* involved a defendant alleged to have triggered the criminal act of a third party, as is the case here. *See* Restatement (Second) of Torts § 449 ("If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."); *see also Waldon*, 854 S.W.2d at 779 (noting that the Kentucky Supreme Court has adopted § 449). Under these circumstances, the number of prior incidents is of little significance.

Plaintiffs allege that Heimbach and others with him were wearing t-shirts that identified them as supporters of the Traditionalist Worker Party (D.N. 1-1, PageID # 12-13); that Trump knew or should have known that his audience included members of "a recognized hate group"; and that ordering the removal of an African-American woman was thus particularly reckless. (*Id.*, PageID # 21-22 ¶ 122; *see id.*, PageID # 7) They further allege that a protestor had been attacked at an earlier Trump rally. (*Id.*, PageID # 16 ¶ 85) In sum, the Court finds that Plaintiffs have adequately alleged that their harm was foreseeable and that the Trump Defendants had a duty to prevent it.

---

bright lines have been drawn regarding the number and frequency of criminal incidents that will give rise to a duty, case law from other jurisdictions indicates that neither a single incident nor sporadic incidents are sufficient to establish foreseeability." 929 F. Supp. at 1058 (citations omitted). The court cited cases from Nebraska, Texas, and North Carolina. *See id.*

The Trump Defendants also argue that Plaintiffs "fail to plausibly allege proximate cause." (D.N. 9-1, PageID # 67)  However, the complaint alleges that Plaintiffs' injuries were "a direct and proximate result" of the Trump Defendants' actions (D.N. 1-1, PageID # 22 ¶ 22), and it contains ample facts supporting this allegation.  (*See, e.g.*, *id.*, PageID # 12 ¶ 56 ("When Trump told the audience to "get 'em out of here,' Heimbach and his group rushed in and began physically assaulting the protestors."); *id.*, PageID # 15 ¶ 76 ("Trump kept saying 'get them out, get them out,' and people in the crowd began pushing and shoving the protestors . . . ." (quoting Bamberger letter to KWVA)))  The contention that Trump's "statement could not have been the proximate cause of any violence" because the statement was "likely not directed at the crowd" is without merit; as explained above, Plaintiffs plausibly allege that Trump intended for audience members to act on his words.  *See supra* Part II.A.1.a.i.  And the Trump Defendants cite no authority for their assertion that any causal link was "severed" by Trump's later statement "Don't hurt 'em." (D.N. 9-1, PageID # 67)

The Court does not share the Trump Defendants' concern that the complaint lacks allegations as to the type or costs of security present or needed at the rally.  (*See* D.N. 9-1, PageID # 64, 66-67; D.N. 23, PageID # 254)  Plaintiffs' claim is that the Trump Defendants were negligent in relying on audience members to remove protestors rather than letting professional security personnel handle that task, not that security officers weren't present or sufficient in number.  (*See* D.N. 1-1, PageID # 21 ¶ 120)  This claim is further supported by Plaintiffs' allegation that no professionals intervened during the assault.  (*See id.*, PageID # 11 ¶ 47)

Finally, the Court rejects the Trump Defendants' contention that Plaintiffs assumed the risk of injury by choosing to protest at the rally.  (*See* D.N. 9-1, PageID # 68)  The doctrine of assumption of the risk was abolished in Kentucky decades ago.  *See Parker v. Redden*, 421

S.W.2d 586, 592 (Ky. 1967).  To the extent Plaintiffs bear any fault for their injuries, that issue will be addressed through apportionment.  *See* Ky. Rev. Stat. § 411.182; *see also Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 295 (Ky. 2015).

### 2.    Alvin Bamberger

Like the Trump Defendants, Bamberger seeks dismissal of all claims asserted against him.  (D.N. 10)  Plaintiffs concede that neither Shah nor Brousseau alleges a cause of action against Bamberger.  (D.N. 15, PageID # 126)  However, they maintain that Nwanguma's claims of assault and battery are viable.  The Court agrees.

Bamberger's challenge to the assault and battery claims rests on Plaintiffs' purported failure to allege that Nwanguma felt threatened by Bamberger or that she suffered any injury as a result of Bamberger striking and shoving her.  (D.N. 10-1, PageID # 77)  These arguments are meritless.  Bamberger is correct that "the threat of unwanted touching" is an essential element of assault under Kentucky law.  *Banks v. Fritsch*, 39 S.W.3d 474, 480 (Ky. Ct. App. 2001) (citing *Brewer v. Hillard*, 15 S.W.3d 1, 8 (Ky. Ct. App. 1999)).  Plaintiffs allege this generally in Count II of the complaint, asserting that "[b]y attacking Plaintiffs, Defendants Heimbach, Bamberger, and Unknown Defendant[] intentionally, maliciously, wantonly and/or recklessly caused Plaintiffs to experience apprehension and fright of an immediate harmful and/or offensive contact."  (D.N. 1-1, PageID # 18-19)  More importantly, they provide facts to support this allegation, stating that Bamberger and Heimbach were "[t]he most aggressive of those who assaulted Nwanguma" (D.N. 1-1, PageID # 12); that Bamberger "aggressively mov[ed] Nwanguma through the crowd by shoving her and striking her" (*id.*); and that "Bamberger shoved Nwanguma, and continued to shove her repeatedly while she was exiting the Rally."  (*Id.*, PageID # 14)  Under the facts alleged, it is reasonable to infer that Bamberger caused

Nwanguma to fear an "unwanted touching."  *Banks*, 39 S.W.3d at 480; *see Iqbal*, 556 U.S. at 678.

The Court is similarly unpersuaded by Bamberger's contention that Nwanguma has failed to allege any injury.  Again, although the complaint alleges generally that "Plaintiffs suffered injuries" as a result of the assault and battery by Bamberger and Heimbach (D.N. 1-1, PageID # 18-19), it states that Plaintiffs seek "compensatory damages . . . against all Defendants for physical injuries, emotional distress, humiliation, and mental anguish" (*id.*, PageID # 22), and the allegations that Nwanguma was repeatedly shoved and struck by Bamberger support this demand.  Even if Nwanguma were only entitled to nominal damages (as Bamberger maintains), her claim would not be barred for failure to allege such damages in the complaint.  *See Liberty Mut. Fire Ins. Co. v. JT Walker Indus., Inc.*, 554 F. App'x 176, 190 (4th Cir. 2014) ("Nominal damages need not be specifically pleaded where a party alleges a claim for general damages; the general damage allegation sufficiently encompasses nominal damages." (citing *Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Sur. Co.*, 966 F.2d 847, 853 (4th Cir. 1992)).

Finally, Bamberger argues that Count VI of the complaint, which asserts a claim for punitive damages, must be dismissed because no cause of action for punitive damages exists. (D.N. 10-1, PageID # 76).  Bamberger is correct that "a claim for punitive damages is not a separate cause of action, but a remedy potentially available for another cause of action."  *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 378 (W.D. Ky. 2012) (citation omitted).  Thus, the Court will grant his motion as to Count VI.  This dismissal will not preclude Plaintiffs from recovering punitive damages, however.  *See Hume v. Quickaway Transp. Inc.*, No. 3:16-cv-00078-JHM, 2016 U.S. Dist. LEXIS 77831, at *37 (W.D. Ky. 2016) (dismissing punitive-damages claim to

extent it was asserted as separate cause of action but leaving award of punitive damages "for future determination").

### B.      Motion to Strike

Unlike his codefendants, Heimbach does not seek dismissal of any claims; instead, he moves to strike certain portions of the complaint.  (D.N. 11)  Pursuant to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Although the rule permits motions to strike, *see id.*, such motions "are viewed with disfavor and are not frequently granted."  *Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citations omitted).  The Sixth Circuit instructs that a pleading should be stricken "'only when required for the purposes of justice' and only when 'the pleading to be stricken has no possible relation to the controversy.'"  *Vanden Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F. Supp. 3d 730, 752 (W.D. Ky. 2014) (quoting *Brown & Williamson*, 201 F.2d at 822).  Thus, "motions to strike are 'typically denied unless the allegations at issue do not relate to the subject matter of the action and may cause significant prejudice to one or more of the parties.'"  *Id.* (quoting *New Day Farms, LLC v. Bd. of Trs. of York Twp.*, No. 2:08-cv-1107, 2009 U.S. Dist. LEXIS 130429, at *9 (S.D. Ohio June 10, 2009)).  The purpose of a motion to strike is to "'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case."  *Operating Eng'rs*, 783 F.3d at 1050 (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)).  Heimbach's motion does not serve this purpose.

"An allegation is 'impertinent' or 'immaterial' when it is not relevant to the issues involved in the action.  'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from

the dignity of the court." *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 801 (E.D. Mich. 2015) (internal quotation marks and citation omitted). Heimbach attacks thirteen segments of the complaint as being impertinent, immaterial, or scandalous. (D.N. 11)  The first two, a quote from Ronald Reagan and an introductory paragraph asserting that Trump broke with American political tradition by "by inciting his supporters to physically attack protestors at his rallies and campaign appearances," are challenged by Heimbach as "rhetorical flourish."  (*Id.*, PageID # 86 (quoting D.N. 1-1, PageID # 6))  While these parts of the complaint may not be essential, they are neither unrelated to the case nor prejudicial to Heimbach.  *See Vanden Bosch*, 13 F. Supp. 3d at 752.  Rule 12(f) is not a means for the Court to edit Plaintiffs' complaint, and the Court declines to do so.  *Cf. Saylavee LLC v. Hockler*, 228 F.R.D. 425, 426 (D. Conn. 2005) ("Inappropriately hyperbolic allegations, ill-conceived attempts at levity, and other similar manifestations of bad judgment in drafting pleadings, by themselves, fall short of the threshold that Rule 12(f) contemplates.").

The Court also declines to strike the paragraphs discussing Heimbach's association with a white nationalist group and statements Heimbach has made about how Trump may further the interests of that group.  (*See* D.N. 1-1 ¶¶ 4-8, 54, 67, 72)  These paragraphs provide context for the alleged attacks on Nwanguma and the other plaintiffs by illustrating Heimbach's antipathy toward non-whites and persons who oppose Trump.  *See, e.g.*, *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000) (reversing grant of motion to strike where stricken material "provide[d] important context and background to [the plaintiff's] suit"); *see also, e.g.*, *Jones v. Heritage-Crystal Clean, LLC*, No. 8:16-cv-623-T-33JSS, 2016 U.S. Dist. LEXIS 99490, at *7 (M.D. Fla. July 29, 2016) (declining to strike allegations that "provide[d] helpful context and background information").  For the same reason, the allegations support Plaintiffs' claim for

punitive damages. *See* Ky. Rev. Stat. § 411.184(2) (providing for punitive damages where plaintiff can prove that defendant "acted toward the plaintiff with oppression, fraud or malice"); Wright & Miller, *Federal Practice & Procedure* § 1382 (3d ed. 2017) (courts need not strike allegations that may be relevant to punitive-damages claims). They may also support Plaintiffs' negligence and incitement claims by suggesting that the Trump Defendants should have been aware that the audience included white nationalists. *See supra* Parts II.A.1.a, c. Because the allegations relate to Plaintiffs' claims, they will not be stricken. *See Vanden Bosch*, 13 F. Supp. 3d at 752.

Nor does the Court find Paragraphs 40 and 41—which describe racial, ethnic, and sexist slurs Nwanguma allegedly heard at the rally—to be impertinent, immaterial, or scandalous, as Heimbach contends. (D.N. 11, PageID # 91-92; *see* D.N. 1-1, PageID # 11) While the words themselves are repulsive, they are relevant to show the atmosphere in which the alleged events occurred. *See Stanbury Law Firm*, 221 F.3d at 1063. Moreover, these allegations pose no prejudice to Heimbach, who is not mentioned in either paragraph.

Finally, Plaintiffs' allegation in Paragraph 83 that they filed police reports concerning the alleged attacks is related to the controversy and does not prejudice Heimbach in any way. *See Vanden Bosch*, 13 F. Supp. 3d at 752. It therefore will not be stricken.

## III.    CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     The motion to dismiss by Defendants Donald J. Trump and Donald J. Trump for President, Inc. (D.N. 9) is **GRANTED** as to Count IV of the complaint.  The Trump Defendants' motion is **DENIED** as to Counts III and V.

(2)     Defendant Alvin Bamberger's motion to dismiss (D.N. 10) is **GRANTED** with respect to Count VI of the complaint and any claims by Shah or Brousseau against Bamberger. Bamberger's motion is **DENIED** in all other respects.

(3)     Defendant Matthew Heimbach's motion to strike (D.N. 11) is **DENIED**.

(4)     Plaintiffs' motion for a hearing to address whether Defendant Trump should be deposed prior to his inauguration as President (D.N. 24) is **DENIED** as moot.

(5)     Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter is **REFERRED** to Magistrate Judge H. Brent Brennenstuhl for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all nondispositive matters, including discovery issues.  Judge Brennenstuhl is further authorized to conduct one or more settlement conferences in this matter.

March 31, 2017

**David J. Hale, Judge**
**United States District Court**

# Exhibit B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KASHIYA NWANGUMA, et al.,                                                    Plaintiffs,

v.                                           Civil Action No. 3:16-cv-247-DJH-HBB

DONALD J. TRUMP, et al.,                                               Defendants.

\* \* \* \* \*

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Kashiya Nwanguma, Molly Shah, and Henry Brousseau allege that they were attacked by audience members, including Defendants Matthew John Heimbach and Alvin Bamberger, during a rally for Donald J. Trump during his 2016 presidential campaign. (Docket No. 1-1) They assert that Trump incited the violence by saying "Get 'em out of here," and they seek to recover damages from Trump and his campaign, Donald J. Trump for President, Inc., as well as Bamberger and Heimbach. (*See id.*) The Court previously granted the Trump Defendants' motion to dismiss with respect to Plaintiffs' claim of vicarious liability but allowed their incitement and negligence claims to proceed.[1] (D.N. 27) The Trump Defendants have moved to certify that Memorandum Opinion and Order for interlocutory appeal. (D.N. 36) In the alternative, they ask the Court to reconsider its ruling. (*See id.*) The Trump Defendants also object to Magistrate Judge H. Brent Brennenstuhl's denial of their motion to stay discovery pending resolution of the motion to certify. (D.N. 46) For the reasons explained below, the motion to certify for interlocutory appeal or to reconsider will be granted. The objection will be overruled as moot.

---

[1] Heimbach and Bamberger asserted cross-claims against the Trump Defendants (D.N. 30; D.N. 32-1), which the Trump Defendants have moved to dismiss (D.N. 40); that motion will be addressed in a separate opinion.

# I.

The following facts are set out in the complaint and, as required, were accepted as true for purposes of the Court's ruling on the motion to dismiss.  *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

On March 1, 2016, Trump held a campaign rally at the Kentucky International Convention Center in Louisville, Kentucky.  (D.N. 1-1, PageID # 10; *see id.*, PageID # 8) Nwanguma, Shah, and Brousseau each attended the rally for the purpose of "peacefully protesting Trump."  (*Id.*, PageID # 11-13)  As they were protesting, Trump said, "Get 'em out of here."  (*Id.*, PageID # 10)  Heimbach, Bamberger, and other audience members then physically attacked Plaintiffs.  Nwanguma, who is African-American, was shoved first by Heimbach and then by Bamberger, who also struck her.  (*Id.*, PageID # 12)  Shah was likewise shoved by Heimbach and other audience members.  (*Id.*, PageID # 13)  Brousseau, a seventeen-year-old high school student, was punched in the stomach by an unknown defendant believed to be a member of the Traditionalist Worker Party, a white nationalist group Heimbach was representing at the rally.  (*Id.*, PageID # 7-9, 12-14)  Plaintiffs allege that as they were being attacked, Trump said, "Don't hurt 'em.  If I say 'go get 'em,' I get in trouble with the press . . . ."  (*Id.*, PageID # 10)

In a letter to the Korean War Veterans Association, whose uniform he wore at the rally, Bamberger described the incident as follows: "Trump kept saying 'get them out, get them out' and people in the crowd began pushing and shoving the protestors . . . I physically pushed a young woman down the aisle toward the exit . . . ."  (D.N. 1-1, PageID # 15 ¶ 76 (first omission in original) (quoting letter to KWVA))  Heimbach acknowledged in a blog post that he had "help[ed] the crowd drive out one of the women" who were protesting.  (*Id.*, PageID # 14 ¶ 70)

Videos recorded at the rally captured Heimbach and Bamberger's actions.  (*Id.*, PageID # 11 ¶ 46)

In its March 31, 2017 Memorandum Opinion and Order, the Court granted in part and denied in part the Trump Defendants' motion to dismiss.  (D.N. 27)  The Court concluded that Plaintiffs had failed to adequately allege that the Trump Defendants should be held vicariously liable for Heimbach and Bamberger's actions but found the complaint sufficient as to Plaintiffs' claims of incitement and negligence.  (*See id.*, PageID # 271-84)  The Trump Defendants have since registered their displeasure at that decision in a variety of increasingly impatient ways: filing the instant motion; objecting to the magistrate judge's refusal to stay discovery pending resolution of the motion (D.N. 46); sending a letter from counsel urging the Court to expedite its decision (D.N. 54); and, most recently, seeking a writ of mandamus from the U.S. Court of Appeals for the Sixth Circuit.[2]  *See In re Donald Trump*, No. 17-5830 (6th Cir. July 20, 2017). Under the circumstances, the Court felt it necessary to proceed with consideration of the Trump Defendants' motion notwithstanding their subsequent petition.  The Court is aware of the unique sensitivities involved where the President of the United States is a party to litigation.   In the event the Court of Appeals remands the case for factual development, the Court stands ready to expedite discovery in a manner appropriate to the circumstances of this case.

## II.

The Court may certify an order for interlocutory appeal if it finds that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the

---

[2] The petition for writ of mandamus does not divest this Court of jurisdiction.  *See Nascimento v. Dummer*, 508 F.3d 905, 910 (9th Cir. 2007) (citing *Ellis v. U.S. Dist. Ct.*, 360 F.3d 1022, 1023 (9th Cir. 2004) (en banc)); *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1416 (5th Cir. 1995).

litigation."  28 U.S.C. § 1292(b).  "[I]nterlocutory appeals are limited to questions that present 'neat abstract issues of law.'"  *Hills v. Kentucky*, 457 F.3d 583, 588 (6th Cir. 2006) (quoting *Turner v. Scott*, 119 F.3d 425, 428 (6th Cir. 1997)).

## A.   Incitement

The Trump Defendants insist that the First Amendment should prevent Plaintiffs' incitement claim from proceeding and that whether Trump's statement was protected is a purely legal question amenable to interlocutory review.  They cite various Supreme Court cases in support of their contention that the Court must resolve the First Amendment issue before allowing any discovery.  (*See* D.N. 36-1, PageID # 377-81; D.N. 47, PageID # 447-49)  While the defendants are correct that First Amendment protection is for the Court, not a jury, to decide, *see Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983), it was not treated as a threshold issue in the cases they cite.  In *Harisiades v. Shaughnessy*, for example, the question before the Supreme Court was "whether the United States constitutionally may deport a legally resident alien because of membership in the Communist Party"; the case arrived at the Court following administrative hearings and orders of deportation.  342 U.S. 580, 581 (1952); *see id.* at 581-83, 591-92.  Similarly, *Hess v. Indiana*, 414 U.S. 105 (1973), and *Cohen v. California*, 403 U.S. 15 (1971)—both criminal cases involving First Amendment defenses—were fully litigated prior to appeal, and the Supreme Court's decisions in those cases were based on the evidence of record.[3]  *See Hess*, 414 U.S. at 108-09 ("Since the uncontroverted evidence showed that Hess'[s] statement was not directed to any person or group of persons, it cannot be said that he was advocating, in the normal sense, any action."); *Cohen*, 403 U.S. at 20 (noting lack of evidence

---

[3] Likewise, *McCoy v. Stewart*, 282 F.3d 626 (9th Cir. 2002), was a habeas proceeding arising out of the petitioner's conviction for promoting gang activity.  *See id.* at 628 & n.1, 632-33.

"that anyone who saw [the defendant] was in fact violently aroused or that [the defendant] intended such a result").

Indeed, the cases cited by the Trump Defendants demonstrate that whether speech constitutes incitement is a fact-specific inquiry. For example, in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982), the Supreme Court concluded that the speech at issue was protected by the First Amendment but noted that "[i]f that language had been followed by acts of violence, a substantial question would be presented whether [the speaker] could be held liable for the consequences of that unlawful conduct." *Id.* at 928; *see also McCoy*, 282 F.3d at 631 n.6 ("McCoy's argument that his speech was mere abstract advocacy would, of course, be undermined if the state could prove that the speech actually caused imminent lawless action"). That is precisely the situation in this case: even prior to discovery, Plaintiffs have pointed to evidence that violence did in fact occur and that it was Trump's statement that prompted audience members—in particular, Bamberger and Heimbach—to engage in that violence. (*See* D.N. 1-1, PageID # 14-15 (citing Heimbach's blog post and Bamberger's letter))

The Trump Defendants cite *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485 (1984), for the proposition that courts must "examine for [them]selves the statements in issue and the circumstances under which they were made" in order to determine whether they are protected by the First Amendment. *Id.* at 508 (other internal quotation marks omitted) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964)). To "examine . . . the circumstances under which [statements] were made," the Court must have before it the relevant evidence. *See id.* ("This Court's duty is not limited to the elaboration of constitutional principles; we must also in proper cases *review the evidence* to make certain that those principles have been constitutionally applied." (emphasis added) (quoting *Sullivan*, 376 U.S. at 285)). Indeed, *Bose* entailed "a

5

protracted period of pretrial discovery" before the district court denied the defendant's motion for summary judgment and held a lengthy bench trial on the merits. *Id.* at 488-89.

Thus, the caselaw cited by the Trump Defendants makes clear that whether Trump's statement advocated the use of force does not "turn[] on the objective meaning of the words at issue," as the Trump Defendants contend. (D.N. 47, PageID # 447)  Rather, that determination depends in part on the circumstances surrounding the statement. *See, e.g.*, *Bose*, 466 U.S. at 508; *cf. Connick*, 461 U.S. at 147-48 ("Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.").  On interlocutory appeal, the Sixth Circuit would accept as true Plaintiffs' allegations regarding those circumstances. *See Livermore v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).  The Trump Defendants acknowledge this in passing but nonetheless appear confident that Trump's statement will be considered in a vacuum.[4]  (D.N. 47, PageID # 449-50 ("[I]f an interlocutory appeal is granted, the Trump Defendants will argue to the Sixth Circuit that Mr. Trump's speech cannot constitute 'incitement' as a matter of law because, even accepting Plaintiffs' factual allegations as true, he said nothing to advocate or encourage violence."); *see, e.g.*, D.N. 36-1, PageID # 378-79 ("[T]he Trump Defendants contend that, as a matter of law, Mr. Trump's statements cannot be 'incitement' because he did not make any

---

[4] In support of their position, the Trump Defendants cite *Bible Believers v. Wayne County, Michigan*, 805 F.3d 228 (6th Cir. 2015) (en banc), where the Sixth Circuit concluded that the appellants' "speech was not incitement to riot simply because they did not utter a single word that can be perceived as encouraging violence or lawlessness." *Id.* at 246.  Aside from the fact that—in contrast to the imperative statement under consideration here—the speech at issue in *Bible Believers* consisted of declaratory (if inflammatory) comments reflecting the appellants' feelings about Muslims and Islam, Trump's order unquestionably *was* "perceived as encouraging violence or lawlessness" by at least some members of his audience, including Bamberger and Heimbach. (*See* D.N. 1-1, PageID # 14-15; D.N. 30, PageID # 316 ¶¶ 4-6 (Bamberger's cross-claim stating that he acted in response to the Trump Defendants' "urging"); D.N. 32-1, PageID # 348 ¶ 133 (Heimbach's answer asserting as a defense that he "acted pursuant to the directives and requests of" the Trump Defendants))

mention of violence or lawless action.")) The issue, they maintain, is whether the statement "objectively advocated unlawful violence." (D.N. 47, PageID # 447)

The words "Get 'em out of here" are not objectively violent, of course. But speech may be "sanctioned as incitement" if it "explicitly *or implicitly* encouraged the use of violence or lawless action."[5]  *Bible Believers*, 805 F.3d at 246 (emphasis added) (citing *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (per curiam)). As explained above, context matters; "the character of every act depends upon the circumstances in which it is done." *Schenck v. United States*, 249 U.S. 47, 52 (1919); *see Bose*, 466 U.S. at 508. For example, the exclamation "shoot!" might constitute incitement if directed to a crowd of angry armed individuals, but shouted by a basketball fan or muttered in disappointment, it has no violent connotations. In short, the mere absence of overtly violent language in Trump's statement does not appear fatal to Plaintiffs' incitement claim.

For purposes of interlocutory appeal under § 1292(b), "[a] legal issue is controlling if it could materially affect the outcome of the case." *W. Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) (citing *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992)). Resolution of the incitement

---

[5] The Trump Defendants point to a footnote in the *Bible Believers* opinion in which the court observed that some scholars believe "[i]ncitement requires . . . that 'the words used by the speaker *objectively encouraged* and urged and provoked imminent action.'" 805 F.3d at 246 n.11 (quoting 5 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 20.15(d) (online ed. May 2015)). According to the Trump Defendants, this footnote "emphasized that the proper *Bra[n]denburg* test is whether the speech '*objectively encouraged* and urged and provoked imminent action.'" (D.N. 47, PageID # 458 (quoting *Bible Believers*, 805 F.3d at 246 n.11)) After noting that scholarly viewpoint, however, the Sixth Circuit reiterated that "*Brandenburg*'s plain language (reinforced by *Hess*) requires that the words must, at minimum, implicitly encourage the use of force or lawlessness, or the undertaking of some violent 'act.'" *Bible Believers*, 805 F.3d at 246 n.11. In any event, "Get 'em out of here" easily passes Rotunda and Nowak's test, which requires not that speech objectively encouraged imminent *lawless* action, but simply "imminent action." *Id.*

issue in this case could significantly affect the outcome: if the Sixth Circuit Court of Appeals were to find Trump's statement protected by the First Amendment, Plaintiffs' case against the Trump Defendants would be foreclosed.[6] For the same reason, an immediate appeal of this issue "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Additionally, there exists "substantial ground for difference of opinion" on this issue, *id.*; whether speech constitutes incitement is frequently a close question, *see Harisiades*, 342 U.S. at 592, and is particularly so here given that Trump's statement, on its face, does not explicitly call for violence. Because the Court finds the elements of § 1292 to be met, interlocutory appeal of the incitement question is warranted, and the Court will certify that question for appeal.

## B.    Negligence

As to Plaintiffs' negligence claim, the Court will reverse its prior ruling. Upon further review, the Court concludes that the negligent-speech theory set forth in the complaint is incompatible with the First Amendment. *See James v. Meow Media, Inc.*, 300 F.3d 683, 698 (6th Cir. 2002) ("In protecting against the propensity of expression to cause violence, states may only regulate that speech which is '*directed to* inciting or producing *imminent* lawless action and *is likely to incite* or produce such action.'" (quoting *Brandenburg*, 395 U.S. at 447)).

Plaintiffs maintain that they have asserted a claim of "negligent security" that rests not on Trump's statement, but rather on the Trump Defendants' failure to prevent violence at the rally. (D.N. 42, PageID # 407) Their complaint alleges that the Trump Defendants "had a duty under Kentucky common law to provide adequate security in order to ensure the safety, protection, and well-being of Rally attendees and the general public in connection with the Rally." (D.N. 1-1, PageID # 21 ¶ 117) The claimed breach of that duty, however, is "encouraging members of the

---

[6] As explained below, the Court, upon reconsideration, concludes that dismissal of Plaintiffs' negligence claim is appropriate.

audience" to remove Plaintiffs.  (*Id.* ¶ 121; *see also id.*, PageID # 21-22 ¶ 122 ("In particular, the directive to eject a Black woman, when several members of a group that Trump knew or should have known was a recognized hate group were present in the audience, was entirely reckless, or at least negligent/grossly negligent."))  Although they also allege that the Trump Defendants "knew or should have known that relying on the crowd of Trump supporters to provide security, including making them responsible for ejecting peaceful protestors from the crowd, was an inadequate and entirely reckless, or at least negligent/grossly negligent, way in which to provide security" (*id.* ¶ 120), Plaintiffs do not contend that there were insufficient or incompetent professional security personnel present, nor do they make any other factual allegations suggesting that the security provided at the rally was inadequate to prevent violence.  Rather, the purported negligence was ordering audience members to remove protestors—an intentional act, and one subsumed by Plaintiffs' incitement claim, the appropriate vehicle for challenging Trump's statement.  *See James*, 300 F.3d at 698.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    The Trump Defendants' motion to certify the Court's March 31, 2017 Memorandum Opinion and Order for interlocutory appeal or to reconsider that decision (D.N. 36) is **GRANTED**.

(2)    Pursuant to 28 U.S.C. § 1292(b), the Court's March 31, 2017 Memorandum Opinion and Order is **AMENDED** to certify the following question for immediate appeal:

Does the First Amendment protect Donald J. Trump's March 1, 2016 statement "Get 'em out of here," or may the statement be found to constitute incitement of a riot?

(3)     Count V of Plaintiffs' complaint is **DISMISSED** pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

(4)     The Trump Defendants' objection to the magistrate judge's denial of their motion to stay discovery pending resolution of the motion to certify (D.N. 46) is **OVERRULED** as moot.   Discovery as to the Trump Defendants shall be **STAYED** pending resolution of the interlocutory appeal.   Discovery as to Bamberger and Heimbach shall proceed as set forth in the Scheduling Order entered May 22, 2017 (D.N. 45).   *See Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 626 (6th Cir. 2013).

August 8, 2017

**David J. Hale, Judge**
**United States District Court**

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2017, a copy of the foregoing petition was served by email and Federal Express on the following counsel:

Gregory A. Belzley
Camille A. Bathurst
BELZLEYBATHURST, ATTORNEYS
P.O. Box 278
Prospect, KY 40059
(502) 292-2452
gbelzley@aol.com
camillebathurst@aol.com

Daniel J. Cannon, PSC
David N. Ward
CLAY DANIEL WALTON & ADAMS,
PLC
101 Meidinger Tower
462 South Fourth Street
Louisville, KY 40202
(502) 561-2005
dan@justiceky.com
david@justiceky.com

Stephen Beville Pence
PENCE & WHETZELL, PLLC
9300 Shelbyville Road, Suite 1205
Louisville, KY 40222
(502) 736-6200
steve@pencelegal.com

I also certify that on August 18, 2017, a copy of the foregoing petition was served by Federal Express on the following pro se party:

Matthew John Heimbach
619 North Gospel Street Lot 3
Paoli, IN 47454

/s/ *Michael Carvin*
Michael Carvin